UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Reverend Franklin C. Reaves, et al., | ) | Civil Action No. 4:04-2047-TLW-TER |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | REPORT AND |
| | ) | RECOMMENDATION |
| South Carolina Democratic Party, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

This matter is before the court[1] on Defendants South Carolina Election Commission and State of South Carolina's Motion for Summary Judgment (Document # 114). Because Plaintiffs are proceeding pro se, they were advised on or about August 24, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond[2] to Defendants' Motion for Summary Judgment could result in dismissal of their case. Plaintiffs failed to respond. Defendant South Carolina Democratic Party previously filed a Motion to Dismiss on February 13, 2006, (Document # 90), in which Defendants South Carolina Election Commission and State of South Carolina joined. See Document # 91. Plaintiffs were also advised following that motion that a failure to adequately respond to the Defendants' Motion to Dismiss could result in dismissal of their case. See Document # 92. Plaintiffs failed to respond.

On August 28, 2006, the undersigned issued a Report and Recommendation and Order

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2] The order states that failure "to respond adequately, the motion may be granted, thereby ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible in evidence, and to be executed by a person who would be competent to testify as to matter contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . . . will not be sufficient alone to withstand a properly supported motion for summary judgment."

addressing several outstanding motions, including Defendants' Motion to Dismiss. Document # 116. In the Report and Recommendation, the undersigned noted that Defendants' Motion for Summary Judgment was pending, but the response time had not yet expired. As such, the undersigned recommended that Defendants' Motion to Dismiss be denied at that time but that the Court reserve the right to address the merits of the Motion to Dismiss along with the merits of the Motion for Summary Judgment. Id. The district judge adopted the Report and Recommendation on September 20, 2006. Document # 124. Accordingly, the undersigned will address both the Motion to Dismiss (Document # 90) and the Motion for Summary Judgment (Document # 114) below.

## FACTUAL BACKGROUND

In their complaint, Plaintiffs allege that voting irregularities in the June 8, 2004, democratic primary in South Carolina impermissibly diminished and interfered with their right to vote in violation of, among other laws, the Voting Rights Act of 1965, Equal Protection, Due Process, and 42 U.S.C. § 1983. They allege that the Democratic Party Executive Committee (Executive Committee) determined that there were irregularities in the voting process in the democratic primary election, voided the election as it related to the State Senate District 30 seat (Senate Seat 30) and called for a new election for that seat; however, the Executive Committee did not void the elections for two other positions involved in the same primary election. They allege that Defendants failed to investigate how the voting irregularities affected the two other races held in the democratic primary while knowing that "tainted" votes were cast. They allege that by allowing improperly cast votes to be counted diluted their votes. They also allege that by voiding the primary election for Senate Seat 30, Defendants denied them the right to participate in the voting process and elect the candidate of their choice. Further, they allege that voiding the election where a African American candidate was favored to win (Senate Seat 30) but not disturbing the elections where white candidates were favored to win diluted their vote.

The court can take judicial notice of Case Number 4:04-CV-2171-TLW recently litigated in this court, which involved a claim by the incumbent of Senate Seat 30, Senator Maggie Glover (Glover Case). As set forth in the order filed September 3, 2004, in the Glover Case, it involved a dispute over the decision of the Executive Committee to invalidate the democratic primary election for Senate Seat 30 held in the state counties of Florence, Dillon, Marion and Marlboro. As the result of the primary held on June 8, 2004, the incumbent, Senator Maggie Glover, an African-American female, finished first, Candidate Tim Norwood, a Caucasian male, finished second, and Candidate Kent Williams, an African American male, finished third. Because none of the candidates received a majority of the votes, the State Board of Canvassers ordered a recount of the votes cast pursuant to state law. On June 14, 2004, a recount was performed. As a result of the recount, Senator Glover remained in first place, Candidate Williams was in second place and Candidate Norwood fell to third place.

Candidate Norwood filed a protest on June 16, 2004, of the election results with the South Carolina Law Enforcement Division, alleging widespread voter fraud.[3] Executive Committee subsequently held a hearing and determined that substantial irregularities and illegalities were committed during the voting process, including voting by convicted felons, double voting by persons casting absentee ballots and voting in person, and absentee ballots collected in violation of law by paid campaign workers that were contrary to the will of the voter. An order was submitted to the Governor asking that he set a new date for the election pursuant to S.C. Code Ann. §7-13-1170.

Senator Glover and Candidate Williams subsequently petitioned the South Carolina Supreme Court for review of the Executive Committee's decision voiding the election. During the pendency of the petition, Senator Glover filed the Glover Case. The South Carolina Supreme Court denied Senator Glover's and Williams' petitions for certiorari on July 20, 2004.

---

[3] Candidate Williams initially filed a protest prior to the Board of Canvassers completing its recount; however, he subsequently withdrew his protest.

In the Glover Case, plaintiffs[4] alleged violations of §§ 2 and 5 of the Voting Rights Act of 1965, violations of the Due Process and Equal Protection Clauses of the United States Constitution, and violations of 42 U.S.C. §1983.

After extensive briefing and hearings, the Honorable Terry L. Wooten, U.S. District Judge, granted the motions for summary judgment filed by the Democratic Party and the Executive Committee and dismissed the action against all party defendants.

Subsequently, by Executive Order dated September 7, 2004, Governor Mark Sanford ordered that a new election be held. As a result, African American candidate Kent Williams won the Senate District 30 seat in the November 2, 2004, general election.

## DISCUSSION

**I.    Rule 37(b) and Rule 41(b)**

In the Motion to Dismiss and again in the Motion for Summary Judgment, Defendants move for dismissal of the case pursuant to Rules 37(b) and 41(b), Fed.R.Civ.P., based upon Plaintiffs' numerous failures to comply with the Court's previous orders.

In Mutual Federal Savings & Loan v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989), the Fourth Circuit set forth the test a district court should use in deciding whether to impose the sanction of dismissal pursuant to Rule 37, Fed.R.Civ.P. A district court should consider (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary, which necessarily includes an inquiry into the materiality of the evidence that was not produced; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. Id. (citing Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503-04 (4th Cir. 1977).

---

[4] Reverend Franklin Reaves was also a plaintiff in the Glover Case.

Furthermore, a complaint may be dismissed pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied 493 U.S. 1084 (1990) and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors: (1) the degree of plaintiff's responsibility in failing to respond; (2) the amount of prejudice to the defendant; (3) the history of the plaintiff in proceeding in a dilatory manner; and (4) the existence of less drastic sanctions other than dismissal. Davis v. Williams, 588 F.2d 69 (4th Cir. 1978).

## II.     Discussion

Plaintiffs in this action have consistently failed to comply with the Federal Rules of Civil Procedure, Local Rules of the District of South Carolina, and Orders of this Court.  For example, May 24, 2005, Defendants South Carolina Election Commission and State of South Carolina filed a Motion to Compel Plaintiffs to respond to their discovery requests.  Plaintiffs failed to file a response to Defendants' Motion. On September 14, 2005, the undersigned issued an order granting Defendants' Motion to Compel and directing Plaintiffs to respond to Defendants' discovery requests within twenty days of the date of the Order.  Document # 58.  Plaintiffs were also advised that "failure to cooperate in the discovery process and to abide by a court order may result in sanctions, including dismissal of their case."  Id.  Plaintiffs failed to comply with the September 14, 2005, Order.

Defendants subsequently filed a Second Motion to Compel (Document # 62), requesting that the Court compel Plaintiffs to respond to a second set of interrogatories propounded by Defendants. Defendants also filed a  Motion for Sanctions (Document # 66) following Plaintffs' failure to comply with the Court's Order of September 14, 2005.  Defendants requested that the Court consider dismissal of the case as an appropriate sanction.  On January 4, 2006, the undersigned held a hearing on, among other motions, Defendants' Second Motion to Compel (Document # 62) and Motion for Sanctions

(Document # 66). Five of the nineteen Plaintiffs appeared at the hearing. When asked to advise the Court why he or she had not responded to the discovery requests and the Court order instructing them to respond, each of the five Plaintiffs that were present stated to the Court that they did not understand the discovery process.

Following the hearing, on January 6, 2006, the Court issued an order, in part and in bold, directing Plaintiffs "**to respond to the first set of Interrogatories and Requests to Produce dated April 7, 2005, and the second set of Interrogatories dated July 25, 2005, within ten (10) days of the date of this order. As instructed at the hearing, each plaintiff is to respond to his or her own discovery requests individually and in accordance with the Federal Rules of Civil Procedure.**" Document # 84. The Order further provided that, "**Plaintiffs have been advised that failure to cooperate in the discovery process and to abide by a court order may result in sanctions, including dismissal of their case**." Id.

Plaintiffs also failed to comply with January 6, 2006, Order. It is undisputed that the responses were served on Defendants on January 25, 2006, nine days past the deadline set forth in the Order. In addition, only one copy of the responses was served on Defendants, in violation of the Court's direct Order that each Plaintiff respond to his or her own discovery requests individually.[5]

---

[5]The requirement that each Plaintiff respond individually to the discovery requests stems partially from concerns the undersigned had after Defendants' raised at the hearing the issue of whether many of the plaintiffs were actually signing the documents by their own hand. In regards to Plaintiffs' discovery responses, Defendants state in their Motion to Dismiss,

> the Defendants question the authenticity of the signatures affixed to the responses. Each document has the same copied signature page evidenced by the same copy toner streaks running vertically down the page, the same variations in the signatures (including some that are so faint that they are barely legible due to repeated copying), and multiple missing signatures. This is not the first time the signature page has been manipulated. On the Plaintiffs' Objection to Motion to Dismiss filed October 5, 2004, it is obvious that all but two signatures were signed by the same person as they are the same handwriting.

Defendants' Motion to Dismiss at 3 (Document # 90). Defendants further note in their Motion,
> Mr. Reaves has been admonished by at least one South Carolina Circuit Court Judge for improprieties during litigation and questionable conduct. In an Order of Dismissal dated September 21, 2005, Judge J. Michael Baxley informed Mr. Reaves that he is not allowed to sign any court documents on behalf of any other plaintiffs. He also expressed concern that Mr. Reaves was operating in a representative capacity. . . .[T]his is indicative of Mr. Reaves' pattern of violating the rules of the court.

Furthermore, the signature pages of the joint responses contain signatures for only eleven of the nineteen Plaintiffs. There are no signatures reflected for the remaining Plaintiffs. Finally, Plaintiffs failed to directly respond to many of the requests set forth by Defendants. For example, to questions four through nine of Defendants' Second Set of Interrogatories, Plaintiffs responded as follows:

> 4. For each of the documents listed, did you sign, by your own hand, the document?
>    a) Complaint
>    b) Motion to Amend
>    c) Amended Complaint
>
> Plaintiffs' response:
>
> Plaintiffs were denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiffs plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 4.[sic]  What is or was you [sic] physical address (not a P.O. Box) on each of the following dates and also identity [sic] the state in which you held a driver's license, if any, on each of the specified dates: [dates apparently omitted by Plaintiffs when drafting responses]
>
> Plaintiffs' response:
>
> Plaintiffs met the requirements and qualifications under the law for voting in the June 8, 2004, South Carolina Democratic Party primary election which is in question in this present action, and therefore pleads the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 5. Have you ever physically resided in a state other than South Carolina for the period from June 8, 2001, through June 8, 2004? For Mr. Reaves only, the time period for this interrogatory is from May 11, 1968 through June 8, 2004.
>
> Plaintiffs' response:

---

Id. at 6.

> Plaintiffs met the requirements and qualifications under the law for voting in the June 8, 2004, South Carolina Democratic Party primary election which is in question in this present action, and therefore pleads the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 6.  Have you ever been registered to vote in a state other than South Carolina for the period from June 8, 2001, through June 8, 2004? For Mr. Reaves only, the time period for this interrogatory is from May 11, 1968 through June 8, 2004.
>
> Plaintiffs' response:
>
> Plaintiffs met the requirements and qualifications under the law for voting in the June 8, 2004, South Carolina Democratic Party primary election which is in question in this present action, and therefore pleads the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 7.  Have you ever voted in a state other than South Carolina for the period from June 8, 2001, through June 8, 2004? For Mr. Reaves only, the time period for this interrogatory is from May 11, 1968 through June 8, 2004.
>
> Plaintiffs' response:
>
> Plaintiffs met the requirements and qualifications under the law for voting in the June 8, 2004, South Carolina Democratic Party primary election which is in question in this present action, and therefore pleads the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 8.  Have you ever held a drivers license in a state other than South Carolina for the period from June 8, 2001, through June 8, 2004? For Mr. Reaves only, the time period for this interrogatory is from May 11, 1968 through June 8, 2004.
>
> Plaintiffs' response:
>
> Plaintiffs met the requirements and qualifications under the law for voting in the June 8, 2004, South Carolina Democratic Party primary election which is in question in this present action, and therefore pleads the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

Ex. A to Defendants' Motion to Dismiss (Document # 90-2). In response to each of Defendants'

Requests to Admit, Plaintiffs responded as follows:

> For all named Plaintiffs other than the Reverend Franklin C. Reaves:
>
> 1.  Admit that you did not sign, by your own hand, the Complaint.
>
> Plaintiffs' response:

Plaintiffs were denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude.  Therefore, Plaintiffs plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

2.      Admit that you did not sign, by your own hand, the Motion to Amend.

Plaintiffs' response:

Plaintiffs were denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude.  Therefore, Plaintiffs plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

3.      Admit that you did not sign, by your own hand, the Amended Complaint.

Plaintiffs' response:

Plaintiffs were denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude.  Therefore, Plaintiffs plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

For the Reverend Franklin C. Reaves only:

1.      Admit that each of the Plaintiffs did not sign by his or her own hand, the Complaint.

Plaintiffs' response:

Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at

all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

2. Admit that each of the Plaintiffs did not sign, by his or her own hand, the Motion to Amend.

Plaintiffs' response:

Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

3. Admit that each of the Plaintiffs did not sign, by his or her own hand, the Amended Complaint.

Plaintiffs' response:

Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

4. Admit that you signed, by your hand, certain of Plaintiffs' signatures to the Complaint.

Plaintiffs' response:

Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

5. Admit that you signed, by your hand, certain of the Plaintiffs' signatures to the

>     Motion to Amend.
>
> Plaintiffs' response:
>
> Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.
>
> 6.   Admit that you signed, by your own hand, certain of the Plaintiffs' signatures to the Amended Complaint.
>
> Plaintiffs' response:
>
> Plaintiff Reverend Franklin C. Reaves was denied or abridged the right to vote in the June 8, 2004, South Carolina Democratic Party primary election as citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous conditions of servitude. Therefore, Plaintiff plead the Fifth Amendment of the United States Constitution to this line of questioning by Defendants.

Ex. A to Defendants' Motion to Dismiss (Document # 90-2).

Plaintiffs' noncompliance in this case goes far beyond their failure to adequately[6] participate

---

[6] Although well-established that the Fifth Amendment protection against self-incrimination may be invoked in civil cases, see, e.g., McCarthy v. Arndstein, 266 U.S. 34, 40 (1924), the Supreme Court has also clearly held that it is constitutionally permissible to draw an adverse inference from a party's invocation of the Fifth Amendment in a non-criminal proceeding. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). Furthermore, numerous courts have consistently held that it is proper to dismiss the claim of a plaintiff who exercises his privilege against self-incrimination to refuse to answer questions related to the issues involved in the litigation which he has instituted. See, e.g., Hiley v. United States, 807 F.2d 623, 628 (7th Cir.1986); Lyons v. Johnson, 415 F.2d 540, 542 (9th Cir.1969), cert. denied, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970); Brown v. Ames, 346 F.Supp. 1176, 1177-78 (D.Minn.1972); Kisting v. Westchester Fire Insurance Co., 290 F.Supp. 141, 149 (W.D.Wis.1968), aff'd, 416 F.2d 967 (7th Cir.1969); Bramble v. Kleindienst, 357 F.Supp. 1028 (D.C.Colo.1973); Stop and Shop Cos. v. Interstate Cigar Co., Inc., 110 F.R.D. 105, 107 (D.Mass.1986). See also Afro-Lecon, Inc. v. United States, 820 F.2d 1198 (Fed.Cir.1987); Pavlinko v. Yale-New Haven Hosp., 192 Conn. 138, 470 A.2d 246 (1984); City of St. Petersburg v. Houghton, 362 So.2d 681 (Fla.Dist.Ct.App.1978); Master v. Savannah Sur. Assocs., Inc., 148 Ga.App. 678, 252 S.E.2d 186 (1979); Galante v. Steel City Nat'l Bank of Chicago, 66 Ill.App.3d 476, 23 Ill.Dec. 421, 384 N.E.2d 57 (1978); Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574 (Sup.Ct.1958), aff'd, 7 A.D.2d 995, 183 N.Y.S.2d 868 (1959), aff'd, 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959). The questions propounded to, and information sought from, Plaintiffs relate directly to their conduct in this case and, in fact, the jurisdiction of this Court. While Plaintiffs' failure to provide this information could serve as a basis for dismissal of their case, the undersigned does

in discovery. As noted above, Plaintiffs completely disregarded the September 14, 2005, Order of this Court. Also, they failed to comply with this Court's Order of January 6, 2006.[7] Furthermore, Plaintiffs have failed to respond to at least six substantive motions filed by Defendants in this action, including Motion to Compel (Document # 40), Motion to Consolidate Cases (Document # 51), Second Motion to Compel (Document # 62), Motion for Sanctions (Document # 66), Motion to Dismiss (Document # 90) and Motion for Summary Judgment (Document # 114).[8] The undersigned issued Orders in connection with the Motion to Dismiss (Document # 90) and the Motion for Summary Judgment (Document # 114) warning of the possibility of dismissal if Plaintiffs failed to respond. In addition, Plaintiffs have failed to comply with the Scheduling Orders and the Federal and Local Rules of Court by failing to file Rule 26(a)(1) Initial Disclosures, Rule 26(f) Reports, or Rule 26(a)(3) Pretrial Disclosures.[9]

This Court has provided Plaintiffs numerous opportunities to participate in this action in an appropriate manner. Plaintiffs have flagrantly disregarded Orders of this Court and the rules of procedure. Plaintiffs have further neglected to heed the numerous warnings of this Court that failure to participate in the discovery process, abide by orders of the Court, or respond to the motions filed

---

not rely on this ground for this recommendation.

[7] Plaintiffs failed to file individual responses and to timely comply with the dictates of the Order.

[8] It should also be noted that Plaintiffs also failed to respond to Motion to Amend/Correct Scheduling Order (Document # 39), Motion for Joinder (Document # 42), Motion for Joinder (Document # 53), Motion for Protective Order (Document # 64), Motion to Amend/Correct Scheduling Order (Document # 95), Motion for Extension of Time (Document # 107), Third Motion for Extension of Time (Document # 130), Motion for Joinder (Document # 133), Motion for Joinder (Document # 135), Motion for Extension of Time (Document # 150), and Amended Motion for Extension of Time (Document # 151). However, some of these motions may not have required a response by Plaintiffs.

[9] Plaintiffs' currently pending Motion to Compel (Document # 106) is another example of Plaintiffs' flagrant disregard for the orders of this Court. The Motion was filed over three months after the discovery deadline set forth in the Scheduling Order had passed. The deadline for discovery, which had already been extended once, was February 9, 2006, see Document # 44, and Plaintiffs filed their Motion to Compel on May 12, 2006. If the district judge adopts the recommendation that this case be dismissed pursuant to Rules 37(b) and 41(b), then Plaintiffs' Motion to Compel is moot. Otherwise, the Motion is denied as untimely.

by Defendants could result in dismissal of this action.  Plaintiffs' actions demonstrate "a pattern of indifference and disrespect to the authority of the court."  See Mutual Federal, 872 F.2d at 92. Moreover, Plaintiffs are proceeding pro se and, thus, are entirely responsible for their actions. Plaintiffs' disregard of Orders of this Court and the rules of procedure as well as their lack of participation in this case  is solely through their neglect and not that of an attorney.

Plaintiffs' bad faith refusal to participate in the discovery process and abide by the Orders of this Court has severely hindered Defendants' ability to put forth a defense in this case.  Specifically, Defendants have had to expend an exorbitant amount of effort attempting to elicit from Plaintiffs responses to their discovery requests.

Furthermore, the need to deter the behavior demonstrated by Plaintiffs in this case is great. As stated by the Fourth Circuit, "[i]n such cases, not only does the noncomplying party jeopardize [the] adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct."[10] Mutual Federal, 872 F.2d at 92 (citing National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643 (1976) ; Wilson, 561 F.2d at 504).

As noted above, this Court has allowed Plaintiffs ample opportunities to participate in this case and to comply with Defendants' discovery requests and Orders of the Court.  Furthermore, with each opportunity, the undersigned has warned Plaintiffs of the possibility of dismissal for noncompliance.

Plaintiffs have repeatedly failed to heed these warnings.  Thus, less drastic sanctions would fail to provide the deterrence necessary in this action.

---

[10] The undersigned notes that several of the Plaintiffs in the present action are also Plaintiffs in other cases currently pending before this Court. See, e.g., Reaves, et al v. Sweeny, et al, 4:04-cv-22206-TLW and Reaves, et al v. State of South Carolina, 4:05-cv-00566-TLW-TER.

**CONCLUSION**

In light of Plaintiffs' continuous and flagrant disregard for the authority of this Court as set forth above and pursuant to Rules 37(b) and 41(b), Fed.R.Civ.P., it is recommended that Defendants' Motion for Summary Judgment (Document # 114) be granted,[11] Plaintiffs' case be dismissed in its entirety and all pending motions be rendered moot.[12]

                s/Thomas E. Rogers, III
                Thomas E. Rogers, III
                United States Magistrate Judge

February 23, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice contained on the following page(s).**

---

[11] Defendants' Motion also challenges the merits of Plaintiffs' claims. As Plaintiffs have failed to respond to the Motion for Summary Judgment and failed to submit any affidavits or other evidence challenging Defendants' Motion, Defendants' Motion should be granted on the merits as well.

[12] In addition to Plaintiffs' Motion to Compel (Document # 106), discussed in footnote 9, also pending are Plaintiffs' Motion for Entry of Default (Document # 110) and Motion for Default Judgment (Document # 111) against Defendant Dillon County Election Commission. It does not appear that "Dillon County Election Commission" is a legal entity. Compare S.C. Code Ann. § 7-13-70 (providing for the appointment of county election "commissioners") with S.C. Code Ann. § 7-13-10 (creating the "State Election Commission"). Nonetheless, the "Dillon County Election Commission" was served by certified mail, return receipt requested and delivery restricted to the addressee, Carlyle Price. See Document # 110-3. The proof of service indicates that someone other than the addressee signed the receipt. Therefore, service was not effective under Rule 4(d)(8), SCRCP. To the extent Plaintiff was serving a "Commissioner," Rule 4(d)(5) does not provide for service by mail. Accordingly, if the district judge declines to adopt the recommendation that this case be dismissed pursuant to Rules 37(b) and 41(b), the undersigned recommends that Plaintiffs' Motion for Entry of Default (Document # 110) and Motion for Default Judgment (Document # 111) be denied for the reasons set forth above.